**Opinion issued August 5, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-14-00213-CV**

_____

**IN THE INTEREST OF K.R.L., A MINOR CHILD**

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-06700J**

---

**MEMORANDUM OPINION**

Appellant K.K.L. appeals a decree, rendered after a bench trial, terminating the parent-child relationship between him and his minor daughter, K.R.L. Among its findings, the trial court determined that the evidence supported termination pursuant to Family Code section 161.002(b)(1) because Appellant, an "alleged father," had not filed an admission of paternity after being served in the termination suit. *See* TEX. FAM. CODE ANN. § 161.002(b)(1) (Vernon 2014).

Presenting one issue, Appellant asserts that the evidence was not legally or factually sufficient to support the termination of his parental rights.

We affirm.

## Background

On October 28, 2011, the Department of Family and Protective Services ("DFPS") received a referral regarding fourteen-year-old Z.P. and her sister, nine-year-old K.R.L. The referral alleged that Z.P. had been sexually abused by her maternal step-grandfather and maternal grandmother. The report further alleged that the step-grandfather and the grandmother had taken pornographic photographs of Z.P. The two girls and their mother, J.M., had been living with the grandparents since 2009. J.M. knew the step-grandfather had sexually abused Z.P. in 2006 but nonetheless allowed the grandparents to have access to Z.P.

On October 31, 2011, DFPS filed an "Original Petition for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting the Parent Child Relationship." The petition named Z.P. and K.R.L. as the children involved in the suit. The petition identified J.M. as the mother of both girls, Appellant as the "father and/or alleged father" of K.R.L., and A.W. as the "father and/or alleged father" of Z.P. DFPS sought to terminate the parent-child relationship with respect to each parent.

With respect to Appellant—who is the only parent appealing the trial court's judgment in this case—the petition asserted: "If [Appellant] fails to appear and wholly defaults [DFPS] requests the Court to terminate the parent-child relationship between [Appellant and K.R.L.], pursuant to § 161.002(b)(1), Texas Family Code." DFPS asserted that any parent-child relationship between K.K.L. and K.R.L. should be terminated under Family Code 161.002 if, "[a]fter being served with citation, [Appellant] has not responded by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." DFPS also sought to terminate Appellant's parental rights because he had engaged in one or more of the enumerated acts or omissions listed in Family Code section 161.001.

Initially, DFPS sought to serve Appellant with the suit by publication. Because service was by publication, the trial court appointed an attorney ad litem to represent Appellant's interests. Citation of Appellant was published on February 3, 2012 and April 23, 2012 in the *Daily Court Review*, a newspaper published in Houston, Harris County, Texas.

During this time period, Appellant was incarcerated in Pennsylvania. DFPS caseworker, Sada Garza, mailed a family service plan to Appellant in prison.

On April 23, 2012, Appellant sent a letter to Garza. Appellant indicated in the letter that he had spoken to Garza on the telephone. Apparently referring to the sexual-abuse allegations against the grandparents, Appellant wrote that he "was

3

stunned and shocked to discover that such a horrific crime occurred to a child of mine." Throughout the letter, he referred to K.R.L. as "my child." He stated that he would try to take parenting classes in prison but could not fulfill all of the requirements of the service plan due to his incarceration. Appellant wrote that he had been convicted of "possession with intent to deliver" and had been sentenced to 6 to 12 years in prison. The earliest he would be released was 2015. Appellant also stated that his mother would attempt to gain custody of K.R.L. He requested "progress reports in any matter involving [K.R.L.]."

Appellant made no mention of the termination suit in the letter. He signed the service plan and enclosed the signature page with his letter to Garza.

In addition to service by publication, Appellant was personally served in prison with the petition to terminate his parental rights on June 7, 2012. On August 12, 2012, the trial court ordered Appellant to participate in DNA testing to determine paternity with respect to K.R.L.

A person authorized to collect the DNA sample went to the Pennsylvania prison where Appellant is incarcerated on September 20, 2012. However, Appellant refused to provide the sample and submit to the court-ordered DNA testing.

The case was tried to the bench on December 6, 2012. At that time, Appellant had not filed any documents in the trial court; nor had he made any

representations to the court admitting paternity. Court-appointed counsel represented Appellant's interest at trial, but Appellant did not testify or otherwise appear at trial. At trial, DFPS claimed that Appellant's parental rights to K.R.L. should be terminated under Family Code section 161.002(b)(1) because Appellant had not filed an admission of paternity or a counter-claim to establish paternity.

DFPS also sought to terminate Appellant's parental rights because he had engaged in acts that violated Family Code subsections 161.001(D), (E), (N), (O), and (Q). DFPS asserted that termination was in K.R.L.'s best interest.

The State presented the testimony of several witnesses. Z.P.'s and K.R.L.'s mother, J.M., testified at trial by telephone. Because she was on parole, J.M. was not permitted to leave Pennsylvania to testify at trial.

J.M. testified that Z.P. and K.R.L. were both born in Pennsylvania. J.M. was 17 years old when Z.P. was born in 1997. J.M. acknowledged that A.W. was Z.P.'s father.

J.M. stated that she was 19 years old when she began a relationship with Appellant. Although they never married, she stayed in a relationship with Appellant for eight and one-half years. J.M. testified that Appellant is K.R.L.'s father, and his name appears on her birth certificate.

J.M. acknowledged that, while they were a couple, Appellant would hit her. J.M. also acknowledged that Appellant was arrested for illegal drug possession

5

three times while they were a couple. The evidence showed that, in March 2006, Appellant was convicted in Pennsylvania state court of multiple counts of possession of a controlled substance with intent to deliver. He was sentenced to one to two years in prison. J.M. indicated that she ended her relationship with Appellant when he went to prison. J.M. testified that it was after she ended her relationship with Appellant that she found out that he had been convicted of sexually assaulting a minor. At trial, the State introduced records showing that Appellant had been convicted of rape in Pennsylvania when he was a juvenile.

In July 2006, Z.P. went to stay with her maternal grandmother and step-grandfather in Houston. After one week, J.M. was contacted by the FBI, who told her that the step-grandfather had taken pornographic pictures of Z.P. and had touched her inappropriately. J.M. traveled to Houston and took Z.P. back to Pennsylvania.

J.M. testified that, after she ended her relationship with Appellant, she allowed Appellant to see her two daughters when he was released from prison. J.M. testified that, in September 2008, Appellant raped Z.P. during one of these visits. J.M. stated that she reported the sexual assault to the police in Pennsylvania, but Appellant was never arrested for the sexual assault. J.M. testified that, after the sexual assault, she could not work because she was afraid to

leave her children alone. She stated that she resorted to selling illegal drugs to earn money.

J.M. was arrested in October 2009 for possession of a controlled substance with the intent to sell. J.M. testified that she feared she would go to prison and that Appellant "would get his hands on my kids." She fled Pennsylvania with her two daughters and moved to Houston to live with her mother and her step-father.

At trial, J.M. admitted that she knew that her step-father had been accused of molesting Z.P. and taking pornographic pictures of her in 2006. J.M. claimed that, when she had contacted the FBI in 2009, she was told that no charges had been brought against her step-father. She testified that she never left her children alone with her step-father, but admitted that she left the children alone with her mother.

The evidence showed that J.M.'s mother and step-father took pornographic pictures of Z.P., and they were arrested by federal authorities in October 2011 for child pornography. As a result, Z.P. and K.R.L. were taken into custody by DFPS. J.M.'s mother and step-father pleaded guilty in federal court to four counts of child pornography.

J.M. returned to Pennsylvania where she was convicted of the 2009 drug charges. J.M. was incarcerated, but he had been released on parole by the time of trial. J.M. testified that Appellant was in prison in Pennsylvania. DFPS also

introduced evidence that Appellant had been convicted of two drug-related offenses in November 2009 for which he was sentenced to 6 to 12 years in prison.

J.M.'s sister, Victoria, also testified at trial. Victoria also resides in Pennsylvania. DFPS placed Z.P. and K.R.L. with Victoria in July 2012, where they were still living at the time of trial. Victoria testified that the girls have their ups and downs but are doing "pretty well" in her home. She stated that the girls are receiving counseling and will require counseling for a long time. Victoria stated that she wishes to adopt Z.P. and K.R.L.

DFPS caseworker Sada Garza also testified at trial. She confirmed that there were allegations that Appellant had raped Z.P. and that Z.P. had been a victim of sexual abuse by her step-grandfather. Garza also confirmed that the girls were doing well in the care of their aunt, Victoria.

In addition, Garza testified that she had mailed a copy of the family service plan to Appellant in prison. DFPS introduced into evidence a copy of Appellant's letter to Garza, dated April 23, 2012, in which he referred to K.R.L. as his child.

DFPS offered the testimony of the Betsy Sanchez, the court-appointed guardian ad litem for Z.P. and K.R.L. Sanchez provided her opinion that Appellant's parental rights should be terminated. When asked why, Sanchez stated, "now he is saying that he's not the father." She also said that Z.P. was

"very clear about what [Appellant] did to her" and that "[K.R.L.] was aware because she was at home when it happened."

DFPS also offered into evidence the records of the company that had attempted to obtain the court-ordered DNA sample from Appellant in prison. These documents indicate that Appellant refused to submit to the DNA testing. The documents have the following notations made by the person sent to the prison to collect the DNA sample from Appellant: "Donor refused to provide specimen after completing paperwork," "Donor refused [at] last minute to take test," and "Here is the documentation on [Appellant]. He refused to complete the test. Would not let us collect his sample." The Court Appointed Advocate Report, admitted into evidence, reflects, "[Appellant] has refused to do paternity testing in order to determine if he is [K.R.L.'s] father."

After the close of evidence, DFPS requested the trial court to terminate the parental rights of (1) J.M., (2) Appellant, and (3) A.W., Z.P.'s alleged father. With regard to Appellant, DFPS sought termination based on Family Code subsections 161.001(D),(E),(N), (O), and (Q). DFPS also requested termination pursuant to Family Code subsection 162.001(b)(1) "because [Appellant] did not step forward and establish his paternity . . . ."

In response to DFPS's request, Appellant's attorney asserted that DFPS had failed to offer clear and convincing evidence to support termination on the grounds alleged. Appellant's court-appointed attorney ad litem then stated,

> So, therefore, Your Honor, I'd request that the Court make no findings as to [K.R.L.]. And if the Court is going to terminate [Appellant's] rights, that it be done for his failure to register or file a counterclaim in this case, as opposed to any of the grounds that have been—that they're asking for, particularly in light of the fact that he really hasn't been established as a father.

The trial court then orally rendered its decision. The court ruled that J.M.'s parental rights were terminated under Family Code subsections 161.001(D), (E) and (O). The trial court also stated that the fathers' parental rights, including Appellant's parental rights, were terminated "under [161].002, paternity registry and failure to respond in the lawsuit." To clarify the ruling, DFPS asked the trial court, "You're basically terminating all fathers under .002(b)(1)" based on the fathers' "failure to come forward?" The trial court responded, "Yes."

Although the trial court orally rendered its ruling at the end of trial on December 6, 2012, a written judgment had not been signed when the court held a hearing in the case on January 31, 2014. At that hearing, DFPS's counsel stated that he had become aware of a court order in Pennsylvania establishing the paternity of Z.P.'s father, A.W. DFPS requested that the claims against A.W. be severed from the other claims.

Counsel also stated, "[D]uring the trial, [Appellant], he was terminated on, basically, failure to establish paternity. And there are a few little holes possibly in that scenario." Without elaborating what the "holes" were, DFPS counsel requested the trial court "to make an additional finding" under Family Code subsection 161.001(1)(Q) to support termination of Appellant's parental rights.[1] Appellant's attorney ad litem stated, "I'm definitely objecting to the motion that deals with my client . . . . Sounds like the Court heard all the evidence in 2012; the Court made its ruling. There's no additional evidence that the State is seeking to inject."

Ultimately, the trial court signed the final decree based on the oral findings it made at trial. The trial court signed the decree on February 13, 2014, terminating the parental rights of J.M., Appellant, and A.W. With regard to Appellant, the decree provides:

> 8.1. The Court finds by clear and convincing evidence that termination of the parent child relationship, if any exists or could exist, between the alleged father, [Appellant] and [K.R.L.], a child the subject of this suit, is in the best interest of the child.

---

[1] Section 161.001(1)(Q) of the Family Code provides that a trial court may terminate a parent's rights to her child if the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition[.]" TEX. FAM. CODE ANN. § 161.001(1)(Q) (Vernon 2014).

8.2 The Court finds by clear and convincing evidence that, after being served with citation in this suit, [Appellant] did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit.

8.3 Further, the Court finds by clear and convincing evidence that [Appellant] has:

> 8.3.1. Not registered with the paternity registry, and after the exercise of due diligence by the Department, his identity and location are unknown.

8.4. The Court further finds that the Department has exercised due diligence attempting to identify, locate, and serve the alleged father.

8.5. IT IS THEREFORE ORDERED AND DECREED that the parent-child relationship, if any exists or could exist, between [Appellant] and [K.R.L.], a child the subject of this suit, is finally and forever terminated.

On February 27, 2014, Appellant filed a motion for new trial. In the motion, Appellant asserted, "On or about January 22, 2013, the Department of Family and Protective Services received a certified 'Acknowledgement of Paternity' from the Pennsylvania Dept. of Public Welfare wherein [Appellant] acknowledged that he is the father of [K.R.L.]. Therefore, new evidence has been obtained after trial that supports granting a new trial."

The trial court conducted a hearing on the motion for new trial on March 11, 2014. At the hearing, it was explained to the trial court that DFPS had received the Acknowledgement of Paternity from the Pennsylvania Department of Public Welfare in January 2013, one month after the conclusion of the trial in this case.

12

DFPS had filed the acknowledgement of paternity with the district clerk's office in this case on January 22, 2013.

The acknowledgement of paternity reflects that Appellant signed the document the day after K.R.L. was born. In it, Appellant voluntarily acknowledged that he was K.R.L.'s biological father. Appellant offered the document into evidence at the motion for new trial hearing. Appellant asserted that the acknowledgement undermined the trial court's findings supporting termination of Appellant's parental rights as an alleged father under Family Code section 161.002. The trial court did not sign an order regarding the motion for new trial; thus, it was overruled by operation of law.

Appellant now appeals the trial court's termination of the parent-child relationship between him and K.R.L.[2] Appellant raises a single issue on appeal challenging the legal and factual sufficiency of the evidence to support the trial court's findings, which terminate his parental rights pursuant to subsections 161.002(b)(1) and 161.002(b)(2) of the Family Code.

**Sufficiency of the Evidence**

**A.    Applicable Legal Principles**

Termination of parental rights requires proof by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (Vernon 2014); *In re J.F.C.*, 96

---

[2]    Neither J.M. nor A.W. appealed the trial court's decree.

S.W.3d 256, 263 (Tex. 2002). This heightened standard of review is mandated not only by the Family Code but also by the Due Process Clause of the United States Constitution. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *see also Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S. Ct. 1388, 1394–95 (1982) (recognizing fundamental liberty interest parent has in his or her child and concluding that state must provide parent with fundamentally fair procedures, including clear and convincing evidentiary standard, when seeking to terminate parental rights). The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (Vernon 2014); *J.F.C.*, 96 S.W.3d at 264.

Family Code section 161.002, entitled "Termination of the Rights of an Alleged Biological Father," provides a method by which a court may involuntarily terminate the parent-child relationship. *See* Tex. Fam. Code. Ann. § 161.002. Subsection 161.002(b) provides:

> (b) The rights of an alleged father may be terminated if:
>
> > (1) after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160;
> >
> > (2) the child is over one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed, he has not registered with the paternity registry under

Chapter 160, and after the exercise of due diligence by the petitioner:

(A) his identity and location are unknown; or

(B) his identity is known but he cannot be located;

TEX. FAM. CODE ANN. § 161.002(b). Here, the trial court found that Appellant had violated subsections (b)(1) and (b)(2).

When determining a legal sufficiency point in a termination case, we review all the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the fact finder's conclusions, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* This does not mean that we must disregard all evidence that does not support the finding. *Id.* The disregard of undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* Therefore, in conducting a legal-sufficiency review in a parental-termination case, we must consider all of the evidence, not only that which favors the verdict. *See City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005).

In determining a factual-sufficiency point, the higher burden of proof in termination cases also alters the appellate standard of review. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id.* at 25. In considering whether evidence rises to the level of being clear and convincing, we must consider whether the evidence is sufficient to reasonably form in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established. *Id.* We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

We are mindful that the natural rights that exist between parents and their children are of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Therefore, termination proceedings should be strictly scrutinized, and the involuntary termination statutes should be strictly construed in favor of the parent. *Id.* at 20–21; *see also In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). However, "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of

the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *C.H.*, 89 S.W.3d at 26; *see also In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013).

## B. Analysis: Failure to Admit Paternity

Pursuant to Family Code subsection 161.002(b)(1), the trial court determined:

> The Court finds by clear and convincing evidence that, after being served with citation in this suit, [Appellant] did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit.

*See* TEX. FAM. CODE ANN. § 161.002(b)(1).

### 1. *Acknowledgement of Paternity*

On appeal, Appellant argues that the evidence was legally and factually insufficient to sustain the (b)(1) finding because "the acknowledgment of paternity executed in 2002 and filed with the appropriate Pennsylvania state agency establishes that [Appellant] timely filed an admission of paternity long before the 'final hearing in this suit.'" Although it was filed with the Pennsylvania agency in 2002, the record reflects that DFPS did not discover the acknowledgment of paternity until the month after trial, at which time it filed the acknowledgement with the district clerk's office to be included in the trial court's file. At no time did Appellant respond to the suit—after being served both by publication and by

personal service—by filing the acknowledgement of paternity with the trial court or otherwise rely on it as an admission of paternity before the trial court rendered judgment terminating his parental rights.

We recognize that Appellant offered the acknowledgment of paternity into evidence at the hearing on his motion for new trial. However, when conducting a sufficiency-of-the-evidence evaluation, we consider only the evidence introduced at trial. *See In re J.T.K.*, No. 12–13–00339–CV, 2014 WL 1093086, at *8 n.5 (Tex. App.—Tyler Mar. 19, 2014, no pet.) (refusing to consider evidence offered at pre-trial hearing in determining whether evidence was sufficient to support trial court's finding in a termination-of-parental-rights case); *Rangel v. Robinson*, No. 01–05–00318–CV, 2007 WL 625042, at *7 (Tex. App.—Houston [1st Dist.] Mar. 1, 2007, pet. denied) (mem. op.) (stating, when "evaluating the sufficiency of the evidence of the trier of fact's award of punitive damages, we cannot consider post-judgment evidence . . . because that evidence was not before the trial court at trial"); *Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 612–13 (Tex. App.—Fort Worth 2004, pet. denied) (reviewing only evidence adduced at trial and rejecting argument that evidence offered in earlier summary-judgment proceeding should be considered in sufficiency evaluation following jury trial); *Vanscot Concrete Co. v. Bailey*, 862 S.W.2d 781, 783 (Tex. App.—Fort Worth 1993), *aff'd*, 894 S.W.2d 757 (Tex. 1995) (explaining that document attached to

motion for new trial had no bearing on sufficiency-of-the-evidence examination because document not introduced at trial). Similarly, as mentioned, the acknowledgment of paternity was filed by DFPS, post-trial, and, thus, could not have been considered by the trial court before the conclusion of the trial.

2. *The April 23, 2012 Letter*

Appellant also asserts that the evidence is legally and factually insufficient to support termination under subsection 161.002(b)(1) because he acknowledged paternity of K.R.L. in the April 23, 2012 letter he wrote to DFPS caseworker, Sada Garza, in which he expressed concern about "his child," K.R.L., and indicated his desire to complete the family service plan. As Appellant points out, Texas courts have recognized that there are no formalities that must be observed for an admission of paternity to be effective. *See In re U.B.*, No. 04–12–00687–CV, 2013 WL 441890, at *2 (Tex. App.—San Antonio Feb. 6, 2013, no pet.); *In re V.S.R.K.*, No. 02–08–00047–CV, 2009 WL 736751, at *4 (Tex. App.—Fort Worth Mar. 19, 2009, no pet.). Indeed, "there is no provision in the Texas Family Code that specifies any particular form or language required for an admission of paternity." *Estes v. Dallas Cnty. Child Welfare Unit of Tex. Dep't of Human Servs.*, 773 S.W.2d 800, 801 (Tex. App.—Dallas 1989, writ denied); *see also Toliver v. Tex. Dep't of Family and Protective Servs.*, 217 S.W.3d 85, 105 (Tex. App.—Houston

[1st Dist.] 2006, no pet.) (stating, "[T]here is no reference in the statute to any formalities that must be observed when 'filing' such a document.").

Relying on this principal, Appellant cites *In re K.W.* to support his position that the letter to Garza served as an admission of paternity in the context of this suit. *See* 138 S.W.3d 420, 430 (Tex. App.—Fort Worth 2004, pet. denied). In *K.W.*, the court held that letters written by the father to the trial court in which he stated that he was the child's father were sufficient to constitute an admission of paternity under the subsection 161.001(b)(1). *See id.*

Appellant also cites *Toliver v. Texas Department of Family and Protective Services*, 217 S.W.3d at 105. In *Toliver*, the alleged father did not file any documents with the trial court. *See id.* Nonetheless, we held that the alleged father's appearance at trial—where he admitted that he was the child's father— triggered his right to require the Department to prove that he had engaged in one of the types of conduct listed in section 161.001(1). *See id.*

Following the reasoning of *K.W.* and *Toliver*, the court in *V.S.R.K.* held that the father, even though he had repeatedly questioned his paternity throughout the case, admitted his paternity for purposes of section 161.002 by certain acts, including the following: (1) filing a general denial in the trial court and (2) filling out a request for appointed counsel in which he stated that he was the parent of the child. *See V.S.R.K.*, 2009 WL 736751, at *4–5; *see also In re A.R.F.,* No. 02–13–

00086–CV, 2013 WL 3874769, at *12–13, *18, *23 (Tex. App.—Fort Worth July 25, 2013, no pet.) (mem. op.) (declining to affirm termination on unchallenged section 161.002 ground because appellant appeared at termination trial and unequivocally testified that he was child's biological father); *In re U.B.*, No. 04–12–00687–CV, 2013 WL 441890, at *2 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (holding alleged father's letter to trial court and his trial testimony constituted an admission of paternity within the meaning of section 161.002(b)(1)).

Unlike in *K.W.*, *Toliver*, and *V.S.R.K.*, Appellant did not file any document in the trial court, did not send a copy of the April 23, 2012 letter to the trial court, and did not testify at trial. In other words, Appellant did not respond to the lawsuit and made no appearance in the trial court to make the trial court aware that he was admitting paternity. While Appellant argues that his letter to Sada Garza, in which he refers to K.R.L. as "his child," evidences an acknowledgement of paternity, letters to third parties, unlike a letter to the trial court, have no legal consequence. Moreover, although it is accepted that there are no formalities that must be observed for an admission of paternity to be effective, we can find no Texas case in which a court has found that an alleged father admitted his paternity when he made no representation of paternity in the trial court.

In addition, evidence was presented from which an inference could be drawn that Appellant was denying paternity within the context of the termination suit.

21

The court-appointed guardian ad litem for the children testified at trial that, "[Appellant] is now saying that he's not the father."

Additionally, in September 2012, DFPS arranged for Appellant to submit to DNA testing while he was incarcerated in Pennsylvania. The records indicate that he refused to participate in the court-ordered testing despite his representation of paternity to DFPS in the April 23, 2012 letter. As noted by DFPS, courts have considered an alleged father's willingness or unwillingness to participate in DNA testing when determining whether he made an admission of paternity for subsection 161.002(b)(1) purposes.

In the case of *In re K.E.S.*, No. 02-11-00420-CV, 2012 WL 4121127, at *3 (Tex. App.—Fort Worth Sept. 20, 2012, pet. denied.), the court determined that the father had admitted paternity because he had made statements to DFPS acknowledging that he was the father and had "completely cooperated when asked to take a paternity test, the results of which were offered by DFPS and admitted without objection by Father." In contrast, the court in *In re D.T.*, No. 02-13-00331-CV, 2014 WL 261408, *2 (Tex. App.—Fort Worth Jan. 23, 2014, no pet.) affirmed termination based on subsection 161.002(b)(1), observing that the father had not written to the trial court claiming paternity and had not appeared at trial to testify. The court also noted, "There is no indication in the record that [the alleged

22

father] offered to take a paternity test or made any effort outside of a single visit with [the child]." *Id.*

Similarly, in *In re J.L.W.*, No. 08-09-00295-CV, 2010 WL 5541187, at \*6 (Tex. App.—El Paso Dec. 29, 2010, no pet.), the court affirmed termination, which had been based on subsection 161.002(b)(1). There, the court observed, "[A]lthough [the alleged father] expressed a willingness to undergo genetic testing, and despite both the trial court's order that testing be performed and the Department's attempts to assist [him] in being tested, [he] never submitted to testing." *Id.*; *see also In re M.A.*, No. 04-05-00112-CV, 2005 WL 3115796, at \*2 (Tex. App.—San Antonio Nov. 23, 2005, pet. denied) (concluding that alleged father's failure to comply with family service plan requirements, including requirement that he establish his paternity, supported trial court's finding that he failed to timely file an admission of paternity).

Given that that Appellant made no representations in the trial court that he was K.R.L.'s father, along with his refusal to participate in court-ordered DNA testing, we hold that the trial court had legally and factually sufficient evidence to support its determination under subsection 161.002(b)(1) that Appellant "[did] not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160" of the

Texas Family Code.  *See* TEX. FAM. CODE ANN. § 161.002(b)(1).  We overrule

Appellant's sole issue.[3]

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

---

[3] Because the trial court's finding under subsection 161.002(b)(1) supports termination, we need not discuss Appellant's challenge to the trial court's finding under subsection 161.002(b)(2).  *See In re A .V.*, 113 S.W.3d 355, 362 (Tex. 2003) (affirming termination decree based on one ground without reaching second ground found by fact finder and challenged by appellant).  Similarly, we need not reach a cross-point raised by DFPS in which it asserts that the termination can be affirmed on an alternate basis.